BRENDA W. DAVIS
bdavis@bwdlawgroup.com
THE BRENDA DAVIS LAW GROUP
1990 3rd Street, Suite 400
Sacramento, CA. 95811
Telephone:  (916) 341-7400
Facsimile:   (916) 341-7410

Attorneys for Plaintiff
COUNCIL FOR ENDANGERED SPECIES ACT RELIABILITY

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| COUNCIL FOR ENDANGERED SPECIES ACT RELIABILITY, a nonprofit corporation<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>KENNETH LEE SALAZAR, as Secretary of the United States Department of the Interior; UNITED STATES DEPARTMENT OF THE INTERIOR; UNITED STATES FISH AND WILDLIFE SERVICE; DAN ASHE, as Director of the United States Fish and Wildlife Service, United STATES Department of the Interior; RENNE LOHOEFENER, as Regional Director of the United States Fish and Wildlife Service, Pacific Southwest Region, United States Department of the Interior,<br><br>　　　　　　Defendants. | Case No.:<br><br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

# I.

# INTRODUCTION

This suit seeks declaratory and injunctive relief against the Defendant UNITED STATES FISH AND WILDLIFE SERVICE, the UNITED STATES DEPARTMENT OF THE INTERIOR, KEN SALAZAR, SECRETARY OF THE UNITED STATES DEPARTMENT OF THE INTERIOR, DAN ASHE, DIRECTOR OF THE UNITED STATES FISH AND WILDLIFE SERVICE, and RENNE LOHOEFENER, REGIONAL DIRECTOR OF THE UNITED STATES FISH AND WILDLIFE SERVICE, PACIFIC SOUTHWEST REGION (collectively the "FWS Defendants" or the "Defendants") related to FWS Defendants' (1) failure to comply with the requirements of the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. §§ 4321, *et seq.*, with respect to the FWS's funding of the California Department of Fish and Game's ("CDFG") operation of a statewide system of fish hatchery facilities; and (2) failure to comply with the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, *et seq.*, prior to the completion of the procedural requirements under NEPA, and particularly with respect to the issuance of a Record of Decision ("ROD").

1. Legal Framework of NEPA

"NEPA was designed to promote human welfare by alerting governmental actors to the effects of their proposed actions on the physical environment."[1] Federal agencies must, to the fullest extent possible, administer their laws in accordance with NEPA.[2] NEPA explicitly imposes several requirements on federal agencies.[3] NEPA requires that all federal agencies prepare a detailed statement, known as an Environmental Impact Statement ("EIS"), before engaging in "major Federal [sic] actions significantly affecting the quality of the human environment."[4] The EIS must include the expected environmental impact of the proposed action,[5] unavoidable adverse effects,[6] alternatives to

---

[1] *Metropolitan Edison Co. v. People Against Nuclear Energy*, 460 U.S. 766, 772 (1983).
[2] 42 U.S.C. § 4332.
[3] *Id.*
[4] *Id.* at § 4332(C).
[5] Id at § 4332(2)(C)(i).
[6] *Id.* at § 4332(2)(C)(ii).

Complaint For Declaratory
and Injunctive Relief

1

the proposed action,[7] the relationship between the short-term uses and long-term productivity of the affected area,[8] and any irreversible and irretrievable commitments of resources.[9]

For proposed actions with uncertain environmental effects, the federal agency must first prepare an Environmental Assessment ("EA") to determine if the environmental impact is significant enough to justify requiring the agency to file an EIS.[10] What constitutes significant is not always easily discernible. "Significantly" is defined as requiring consideration of both the context of the action and the intensity of its impact.[11] The regulations issued by the Council on Environmental Quality ("CEQ") define "major federal action" as actions whose effects may be major and potentially subject to federal control.[12] Regulations also clarify when an EIS is required.[13]

The requirements under NEPA are procedural rather than substantive.[14] These procedural requirements promote rational decision-making by requiring federal agencies to consider the environmental consequences of their acts.[15] While procedural, the EIS ensures that environmental considerations are included in federal agencies' decision-making processes.[16] Additionally, the procedural requirement of an EIS provides information to the public about the environmental impact

---

[7] *Id.* at § 4332(2)(C)(iii).
[8] Id. at § 4332(2)(C)(iv).
[9] *Id.* at § 4332(2)(C)(v).
[10] 40 C.F.R. § 1508.14 (1995); 42 U.S.C. § 4332(2)(E); 40 C.F.R. § 1508.9 (1995).
[11] *Id.* § 1508.27.
[12] *Id.* § 1508.18.
[13] *See, e.g., Id.* § 1507.3(b)(2)(i)-(iii) (listing actions that almost always require an EIS); *Id. at* § 1508.4 (1995) (listing categorical exclusions from the requirement of preparing an EIS).
[14] *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council*, 435 U.S. 519, 558 (1978), *rev'd on other grounds* 462 U.S. 87 (1983). The court stated that "NEPA does set forth significant substantive goals for the Nation, but its mandate to the agencies is essentially procedural." *Id. See also Strycker's Bay Neighborhood Council, Inc. v. Karlen*, 444 U.S. 223, 227-28 (1980) (stating that since NEPA only requires consideration of environmental consequences, the act is procedural in nature); *Aberdeen & Rockfish R.R. Co. v. Students Challenging Regulatory Agency Procedures*, 422 U.S. 289, 319 (1975) ("NEPA does create a discrete procedural obligation on Government agencies to give written consideration of environmental issues in connection with certain major federal actions").
[15] 42 U.S.C. § 4332(2)(A).
[16] *Id.; Weinberger v. Catholic Action of Hawaii*, 454 U.S. 139, 143 (1981) (requiring preparation of an EIS to ensure that environmental considerations are injected into the federal agency's decision making process); *Kleppe v. Sierra Club*, 427 U.S. 390, 410 n.21 (1976) (stating that the EIS ensures agencies take a "hard look" at the environmental consequences of their actions).

of agency actions.[17]

The procedural provisions of NEPA mandate strict compliance.[18] The specific requirements of NEPA with respect to major federal action significantly affecting the quality of the human environment clearly speak in mandatory terms, and "do not leave the determination to administrative discretion."[19]

2. Legal Framework of the APA

The APA Section 702 provides that any person suffering a legal wrong because of agency action or a person adversely affected or aggrieved by agency action has a right to seek judicial review of that agency action.

Actions which are reviewable are covered in APA Section 704: (1) agency action made reviewable by statute, in this case NEPA; and (2) final agency action for which there is no other adequate remedy at law, in this case, taking action on the project without having signed the ROD. The reviewing court's scope of review is covered in APA Section 706: the reviewing court may (1) compel agency action unlawfully withheld or unreasonably delayed, for example, having not signed the ROD; and (2) hold unlawful and set aside agency action, findings, and conclusions found to be [a] arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law…or [d] without observance of procedure required by law.

Plaintiff seeks declaratory and injunctive relief from the Court to compel the FWS Defendants to complete procedural requirements under NEPA, 42 U.S.C. §§ 4321, *et seq.,* prior to providing funding and initiating further federal action.

Additionally, Plaintiff seeks an order from the Court declaring the FWS Defendants have violated the APA, 5 U.S.C. §§ 701, *et seq.*, by unlawfully withholding or unreasonably delaying the issuance of the ROD with respect to fish hatchery operations in the State of California.

---

[17] *Robertson v. Methow Valley Citizens Counci*l, 490 U.S. 332, 349 (1989). In fact, NEPA requires all federal agencies to make available "information useful in restoring, maintaining and enhancing the quality of the environment." 42 U.S.C. § 4332 (2)(G).
[18] 42 U.S.C. § 4332(2)(B)
[19] *Wyoming Outdoor Coordinating Council v. Butz*, 484 F.2d 1244 (10th Cir. 1973).

Complaint For Declaratory
and Injunctive Relief

3

## II.

## JURISDICTION & VENUE

The jurisdiction of this court is based on 28 U.S.C. § 1361 (mandamus), 5 U.S.C. §§ 701 to 706 (Administrative Procedure Act), 28 U.S.C. § 1331 (federal question). There is a present controversy between the parties. Venue is properly vested in this court pursuant to 28 U.S.C. § 1402 and the rule of procedure for the U.S. District Court for the Eastern District of California, Rule 120 (d).

## III.

## PARTIES

Plaintiff, The Council for Endangered Species Act Reliability ("CESAR") is a nonprofit, tax exempt, public interest corporation organized under the laws of the State of California. CESAR's mission is to bring scientific rigor to regulatory decisions undertaken pursuant to environmental statutes, to ensure consistent application of these statutes throughout all industries and all sectors, and to fulfill the educational goals of its members and provide educational information on the Endangered Species Act ("ESA") and its application to the general public in the process. See http://bestscience.org/. CESAR fulfills its mission by holding educational seminars, disseminating educational materials to its members, participating in administrative proceedings, and commenting on and initiating litigation about species listings under the ESA. CESAR brings this action on its own behalf and on behalf of its adversely affected members.

CESAR's membership includes residents of the areas involved in this dispute. Each of CESAR's members has a personal interest in the maintenance of a safe, healthful, productive environment and maintenance of endangered species. CESAR's members are concerned with the ongoing availability and use of legitimate means to recover and maintain healthy and viable populations of threatened and endangered fish species, including the use of hatchery operations.

Defendant United States Fish and Wildlife Service ("FWS") is an agency within the Department of the Interior which is charged with conserving, protecting and enhancing fish, wildlife and plants and their habitats for the continuing benefit of the American people.

Defendant Unite States Department of the Interior ("DOI") that is obligated to protect America's natural resources and heritage.

Defendant Kenneth Lee Salazar, United States Secretary of the Interior ("Secretary"), sued in his official capacity, is the highest-ranking official within the Department of the Interior ("DOI") and, in that capacity, has ultimate responsibility for the administration and implementation of the FWS programs.

Defendant Daniel M. Ashe, is sued in his official capacity as Director of the FWS, the nation's principal federal agency dedicated to the conservation of fish and wildlife and their habitats

Defendant Renne Lohoefener, sued in his official capacity as Regional Director of the Pacific Southwest Region of the FWS, is responsible for overseeing FWS programs in California, Nevada and Klamath Basin that administer the Endangered Species Act and Migratory Bird Treaty Act, and manages 51 national wildlife refuges, and three national fish hatcheries

## IV.

## STATEMENT OF FACTS

This action involves fish hatchery projects in the State of California that use federal funds to operate. California Department of Fish and Game ("CDFG"), the principal agency with responsibility to manage and conserve the biological resources of the state, including fish, wildlife, and plants, is the recipient of those funds. The stated mission of CDFG is to manage California's diverse fish, wildlife, and plant resources, and the habitats upon which they depend, for their ecological values and for their use and enjoyment by the public.

As part of its responsibility, CDFG operates a statewide system of fish hatchery facilities that rear and subsequently release millions of trout, salmon, and steelhead of various age and size classes into state waters. The FWS Defendants are presently funding these operations (hereinafter "Hatchery Operations").  CDFG has been stocking fish in the waters of California since the late 1800s.  After the passage of the California Environmental Quality Act (Public Resources Code Sections 21000, *et seq*. ("CEQA") in 1970, CDFG continued operating its hatchery facilities and stocking fish without undertaking a CEQA analysis. Stocking activities were considered exempt from CEQA review on

several grounds, including Section 15301 (j) of the state CEQA Guidelines, which specifically provides an exemption from CEQA review for fish stocking conducted by CDFG.

In 2006, certain environmental groups[20] filed a lawsuit against CDFG claiming that CDFG's fish stocking operation did not comply with CEQA. (*Center for Biological Diversity v. California Dept. of Fish and Game,* Sacramento Superior Court Case No. 06CS01451). CDFG was ordered in July 2007 to comply with CEQA and prepare an EIR regarding its fish stocking operations.[21]

The resulting EIR was expanded to an EIR/EIS, which was prepared jointly with the FWS based on the FWS's assertion that no NEPA documentation had previously been prepared to support its decision-making regarding funding of certain elements of the 2010-2011 and further ongoing Hatchery Operations and stocking activities of CDFG under the Sport Fish Restoration Act (hereinafter "SFRA").[22] The FWS acted as co-lead agency on the environmental documentation.

The funding from the FWS, which administers the SFRA, is used being used during the 2011 fiscal year to support: (1) operation of the 14 trout hatchery facilities owned and operated by CDFG; (2) stocking fish from these hatchery facilities; (3) operating the Mad River steelhead hatchery and its associated stocking; and (4) managing the Fishing in the City and CAEP programs.[23]

CDFG certified the fish stocking EIR/EIS on January 11, 2010, which included the mitigation measures it has adopted for implementation. The activities outlined in the EIR/EIS are authorized and funded by the FWS and these activities are now occurring.

All of these Hatchery Operations are authorized and directed by a number of state and federal laws, regulations, contracts, and management directives. For example, the Trinity River Hatchery is owned by the United States Department of the Interior, Bureau of Reclamation, and is operated by CDFG pursuant to a contract that specifies certain annual fish production goals that CDFG is

---

[20] Pacific Rivers Council and the Center for Biological Diversity

[21] Final Hatchery and Stocking Program Environmental Impact Report/Environmental Impact Statement, January 2010, p. 1-2.

[22] *Id.* at p. 1-2.

[23] *Id.* at ES-3.

responsible for meeting.[24]

## V.

## NATIONAL ENVIRONMENTAL POLICY ACT VIOLATION

NEPA requires that each agency shall prepare a concise public record of decision ("ROD"). The record, which may be integrated into any other record prepared by the agency, including that required by OMB Circular A–95 (Revised), part I, sections 6 (c) and (d), and part II, section 5(b)(4), shall:(a) State what the decision was and (b) Identify all alternatives considered by the agency in reaching its decision, specifying the alternative or alternatives which were considered to be environmentally preferable. An agency may discuss preferences among alternatives based on relevant factors, including economic and technical considerations and agency statutory missions. An agency shall identify and discuss all such factors, including any essential considerations of national policy which were balanced by the agency in making its decision and state how those considerations entered into its decision. Further, the agency shall state whether all practicable means to avoid or minimize environmental harm from the alternative selected have been adopted, and if not, why they were not. A monitoring and enforcement program shall be adopted and summarized where applicable for any mitigation.[25]

Under the regulations, agencies must prepare a "concise public record of decision," which contains the elements specified in the regulations at 40 CFR § 1505.2. This public record may be integrated into any other decision record prepared by the agency, or it may be separate if decision documents are not normally made public. The ROD is intended by the CEQ to be an environmental document (even though it is not explicitly mentioned in the definition of "environmental document" in 40 CFR § 1508.10). Therefore, it must be made available to the public through appropriate public notice as required by 40 CFR § 1506.6(b).[26]

---

[24] Final Hatchery and Stocking Program Environmental Impact Report/Environmental Impact Statement, January 2010, ES-3.

[25] 40 C.F.R. § 1505.2

[26] Forty Most Asked Questions Concerning CEQ's National Environmental Policy Act Regulations, 46 Fed. Reg. 18026-01, March 23, 1981.

The FWS Defendants, to this date, have failed to adopt the ROD for Hatchery Operations as mandated by NEPA and its implementing regulations.

## VI.

## ADMINISTRATIVE PROCEDURE ACT VIOLATION

The APA defines "agency action" to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, **or failure to act".** (5 U.S.C. § 551) The court, under APA Sec. 706(1) "shall: (1) compel agency action unlawfully withheld or unreasonably delayed.

The certification of the EIR/EIS was completed in January 2010. The ROD required by the jointly completed EIR/EIS has never been issued. Despite this failure to act, the FWS has continued to provide SFRA funding and CDFG has continued to receive and use these funds to conduct Hatchery Operations for the past 18 months without this final step. The ROD is the "final" action in the NEPA process that would allow individuals aggrieved by this failure to seek relief in accordance with the provisions and purposes of NEPA.

The Defendants' failure to issue the ROD thus has resulted in the unreasonable delay and unlawful withholding of an agency decision under the APA.

## VII.

## FIRST CLAIM FOR RELIEF

NEPA imposes procedural requirements on agencies. By failing to sign the ROD, the FWS Defendants have failed to meet the procedural requirements of NEPA.

Defendants have failed to fulfill the requirements of NEPA by failing to issue the ROD required by 42 U.S.C. § 4332. Defendants have further acted wrongfully and in violation of NEPA by not issuing the ROD before recommending, sponsoring, and implementing a proposal for major federal action significantly affecting the quality of the environment, namely, the Hatchery Operations, as outlined and described in the EIR/EIS.

## VIII.

## SECOND CLAIM FOR RELIEF

Defendants have acted wrongfully and unlawfully withheld or unreasonably delayed a nondiscretionary action, in violation of NEPA and the APA, by failing to issue the ROD prior to the irreversible and irretrievable commitment of resources, namely the SFRA funding in support of CDFG projects for fiscal years 2010 and 2011.

## IX.

## **PRAYER FOR RELIEF**

THEREFORE, Plaintiff, having no adequate remedy at law, requests:

1. That this Court enter its judgment declaring that the complained of actions by Defendants are in violation of NEPA, and in particular, that Defendants are required by 42 U.S.C. § 4332 to issue such a ROD prior to undertaking any major federal action significantly affecting the quality of the environment.

2. That this Court enjoin Defendants from providing any SFRA funding for the CDFG Hatchery Operations until their nondiscretionary duty to issue a ROD on the related EIR/EIS has been completed as required by 42 U.S.C. § 4332;

3. That Plaintiff be granted such further and additional relief as the Court may deem appropriate.

4. Award Plaintiff's costs, including reasonable attorneys' fees; and

5. Provide such other and further relief as the Court deems just and proper.

DATED THIS 21st day of September, 2011.

                                                THE BRENDA DAVIS LAW GROUP

                                                __/s/ Brenda W. Davis_____
                                                Brenda W. Davis
                                                Attorneys for Plaintiffs

**SERVICE LIST**

KENNETH LEE SALAZAR, as Secretary of the United States Department of the Interior; UNITED STATES DEPARTMENT OF THE INTERIOR; UNITED STATES FISH AND WILDLIFE SERVICE
Department of the Interior
1849 C Street, N.W.
Washington DC 20240

DAN ASHE, as Director of the United States Fish and Wildlife Service, United States Department of the Interior
Department of the Interior
1849 C Street, N.W.
Washington DC 20240

RENNE LOHOEFENER, as Regional Director of the United States Fish and Wildlife Service, Pacific Southwest Region, United States Department of the Interior,
Sacramento Fish and Wildlife Office
2800 Cottage Way Room W-2605
Sacramento, CA 95825-1846

Mr. Eric Holder, United States Attorney General
Department of Justice
Main Justice Building
950 Pennsylvania Avenue
Washington, D.C. 20530

Civil Process Clerk
U.S. Attorney, Eastern District of California
Federal Courthouse
Sacramento Federal Courthouse
501 " I " Street
Suite 10-100
Sacramento, CA 95814